**INDUSTRIAL NUCLEONICS CORPO-RATION, Appellant,**

**v.**

**Edward J. HINDE, d.b.a. Hinde Engineering Co., Appellee.**

**Patent Appeal No. 8858.**

United States Court of Customs and Patent Appeals.

April 5, 1973.

Edward M. Prince, William T. Bullinger (Cushman, Darby & Cushman, Washington, D. C.), attorneys of record, for appellant. William T. Fryer, III, Baltimore, Md., of counsel.

Jack M. Wiseman (Rosenberg & Wiseman, San Jose, Cal.), attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, abstracted at 166 U.S.P. Q. 160 (1970), dismissing appellant's opposition to the registration by appellee of ACCURA-FLO, application serial No. 242,820, filed April 6, 1966, claiming first use March 9, 1966. We affirm.

The goods for which appellee seeks to register the mark are "a metering flume used for the measurement of sewage and industrial waste and allied solutions." The record shows that the flumes sold by appellee under the mark are of two kinds, the Palmer Bowlus flume and the Parshall flume. They are simple mechanical structures of sheet metal or reinforced plastic through which fluid is conducted, in an open channel and not under pressure, the rate of flow being measured by taking a visual depth measurement and then referring to a table or chart to determine the rate of flow. Invoices show a unit price ranging from $90 to $835, depending on type and size.

Appellant opposes registration as the owner of the mark ACCURAY for which it has the following five Principal Register registrations for the goods listed:

No. 585,217, Feb. 2, 1954, "AccuRay" in stylized script, for
Industrial beta gauges used in measuring the weight thickness, and area of sheet materials

No. 646,469, June 4, 1957, "ACCU-RAY" plain block letters, for
Radiation gauges used in measuring the physical properties of materials, and control equipment which includes such gauges for regulating industrial processes

No. 714,707, May 2, 1961, "ACCU-RAY" plain block letters, for
Statistical computation and data reduction systems and component apparatus therefor including computers, counters, classifiers, evaluators, timers, alarms, and information indicators

No. 723,084, Oct. 24, 1961, "ACCU-RAY" plain block letters, for
Material handling systems and component apparatus therefor including conveyors, electrical and mechanical controls, identifiers, routers, counters, classifiers, and sorters

No. 799,849, Dec. 7, 1965, "AccuRay" similar to 585,217, for
Moisture and temperature measuring apparatus and systems.

Appellant is a large manufacturer of industrial measurement and control equipment and systems for measuring such things as thickness, density, fluid level, moisture contents, mass flow rate, and other process variables. Much of the equipment depends on the use of emissions from radio-active materials in conjunction with detectors and amplification, recording and control equipment. In conjunction therewith, the mark AccuRay, usually displayed in script form with a capital "R" in advertising literature, is evidently intended to suggest accurate measurement by some radiation means. It is apparent that AccuRay is also used as the company's house mark. For the most part, the goods are very expensive with common unit prices of the order of $2,500 or far higher.

Priority of use and registration in appellant is not in question. The board

found, and we accept the finding as in accord with the evidence, that,

> The goods of both parties are sold to the same class of purchasers and are used in connection with sewage and industrial wastes. Opposer has also shown that its gauges can be used in conjunction with metering flumes to detect and measure the level of sewage or industrial waste passing through the flume.

■ The sole remaining issue here is whether the concurrent use of the parties' marks on their respective goods is, within the meaning of 15 U.S.C. § 1052(d), likely to cause confusion, or to cause mistake, or to deceive, to the presumed damage of appellant. In determining this question it is necessary to consider the marks, the goods, and all the circumstances surrounding their sale and offering for sale, insofar as these are made known to us by the evidence.

The board correctly held that, among other things, the marks must be considered in their entireties. After discussing their obvious similarities and differences and the suggestiveness of their component parts, ACCURA, FLO, and RAY, as applied to the wares, the board concluded:

> In our opinion the differences in appearance and sound between "AC-CURA-FLO" and "ACCURAY" are substantial when considered in their entireties. And while each of the marks suggests, in the context of each mark, accuracy, this similarity is not believed sufficient to lead the type of purchasers for the goods of the parties to assume a single source of [sic, or?] origin.

The soundness of this judgment is, of course, the only question we have to decide.

■ We agree that visual inspection and vocalization of the marks bring out substantial differences in sound, appearance, connotation, and "commercial impression." These differences might not be sufficient if we were dealing with off-the-shelf items purchased by all manner of people. But we think the fact which fully justifies the board's conclusion in this case is that both parties sell their goods to discriminating purchasers under conditions calculated to insure care in discerning the source or origin of the goods. The following passages from appellee's brief, which clearly conform to the evidence of record, show the situation:

> Applicant's "Accura-Flo" measuring flumes are sold to public agencies and manufacturing institutions on the recommendation of consulting engineers, who specify the item to be purchased by drawings and specifications. * * *
>
> Opposer sells density analyzers and level detectors to public agencies and industrial plants for use in metering stations in sewage treatment plants, in industrial waste plants and in municipal water works. * * * Opposer deals with construction and consulting engineers, sewage and industrial waste engineers and public agencies.

Under these conditions we see no error in the board's conclusion that there is no likelihood of confusion etc. We think purchasers would inevitably be aware of the actual source of the goods.

■ Our decision of some years ago in a case involving appellant and its ACCURAY mark, in which it lost an opposition to the registration of ACCUDA-TA, Industrial Nucleonics Corp. v. Minneapolis-Honeywell Co., 328 F.2d 942, 51 C.C.P.A. 1078 (1964), has been discussed by both parties. Several other cases have been cited as precedents to be followed. As we have said innumerable times, prior decisions on other marks for other goods are of very little help one way or the other in cases of this type. Each case must be decided on its own facts and the differences are often subtle ones. Appellant feels that the marks in the prior *Nucleonics* case were not as close as are the marks in the present case. Our impression—if it be of any present significance—is that the reverse is true, considering the marks in their entireties.

Appellant asks us to resolve doubt against the newcomer, in accordance with the well-established rule, but in spite of its efforts to raise one we find we have no doubt to be resolved.

The decision of the board is affirmed.

Affirmed.

BALDWIN, Judge (dissenting).

I must respectfully disagree that "purchasers would inevitably be aware of the actual source of the goods" here. The class of purchasers involved in this case is very similar to the "engineering firms" involved in Torr X-Ray Corp. v. Sierra Engineering Co., Cust. & Pat. App., 471 F.2d 1247 (1973) in which we held that the use of stylized RADI-FLUOR 360 on fluoroscopic testing units would be likely to cause confusion, mistake, or deception in view of the registered mark RADIFLO for leak testing apparatus. Engineers are not immune from confusion as to source of goods.

In the present case, the record establishes that appellant's mark is well established in industry for a wide variety of measuring and testing devices and systems. The industries served by apparatus bearing appellant's mark include the sewage industry, the very industry in which most of appellee's flumes are used. Appellant's ACCURAY devices are used in conjunction with just such flumes as appellee's. One of appellant's systems consists of a source of radiation mounted on one side of a flume, with a radiation detector mounted on the other side of the flume. The source and detector are used to sense the level of liquid in the flume, thus automatically indicating flow rate, instead of visually determining the liquid level and thus the flow rate. A radiation source and a detector have also been used to measure the density of the material going through the flume. In my opinion, those "consulting engineers, sewage and industrial waste engineers and [purchasing agents for] public agencies" famil-

iar with either of appellant's systems in which ACCURAY instruments are mounted on either side of flow-measuring flumes, when confronted with flow-measuring flumes bearing the mark ACCURA-FLO, would be likely to ascribe those flumes to the manufacturer of the ACCURAY systems. Such being the case, I would reverse the decision of the board.