**DAN ROBBINS & ASSOCIATES, INC., Appellant,**

v.

**QUESTOR CORPORATION, Appellee.**

**Appeal No. 78–613.**

United States Court of Customs and Patent Appeals.

May 24, 1979.

Stefan M. Stein, Stein & Frijouf, P.A., Tampa, Fla., attorneys of record, for appellant.

Donald R. Bahr, Toledo, Ohio, attorney of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and KASHIWA,* Judge.

MARKEY, Chief Judge.

Dan Robbins & Associates, Inc. (Robbins) appeals from the decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board), *Questor Corp. v. Dan Robbins & Associates, Inc.*, 199 USPQ 358 (TTAB 1978), sustaining opposition No. 55,579 by Questor Corporation (Questor) against Robbins' application to register LI'L TINKER and design for children's books, and dismissing Robbins' counterclaim for cancellation of Questor's registration No. 96,175 of TINKERTOY used on games, toys and children's building blocks. We affirm.

### Background

Questor and its predecessors have for many years extensively used and advertised TINKERTOY as a trademark for toy construction sets.[1]

Robbins approached Questor in 1972, seeking a right to solicit licensees outside the toy field. A resulting agreement acknowledged Questor's rights in the mark. To aid a licensing program for children's books, Robbins developed this mark:

Though Robbins' promotional material claimed that children's stories about the animated "Li'l Tinker" character would "further strengthen the Tinkertoy image" and "open up a whole new dimension in our Tinkertoy licensing program," he was unable to secure Questor's permission to use the mark in areas noncompetitive to Questor.

Questor opposed Robbins' application for federal registration, relying on uncontested prior use of its federally-registered mark TINKERTOY for games, toys and children's building blocks.[2] Robbins denied likelihood of confusion and petitioned to cancel Questor's registration, alleging that TINKERTOY had become the common descriptive name of Questor's construction toys.

On January 6, 1976, Questor deposed Mr. Robbins, president of Robbins, with his attorney present. The reporter did not ask Mr. Robbins to sign the transcript until February 26. On May 28, Questor asked Robbins' counsel about Mr. Robbins' availability for signing. The transcript was not filed in the PTO until July 28, when Robbins had not yet received a copy.

---

* The Honorable Shiro Kashiwa, United States Court of Claims, sitting by designation.

1. In January 1978, Questor sold the assets, including the trademark TINKERTOY, of its Questor Education Products Company division, to Child Guidance Playthings, Inc. (CGP), a subsidiary of Gabriel Industries, Inc. (Gabriel).

Questor was obligated to complete this appeal. CGP and Gabriel are now owned by CBS Inc.

2. Questor having failed to answer a request for admission, abandonment of its federally-registered marks, TOM TINKER, TINKER ZOO, and a dowels-spool caricature design, must be taken as admitted.

The board granted Robbins' motion to strike for noncompliance with Trademark Rule of Practice 125(a), 37 CFR 2.125(a),[3] considering the testimony a discovery deposition. When Questor moved for clarification, the board vacated its order, denied the motion in view of Mr. Robbins' refusal to cooperate with the reporter, and allowed Questor until February 25, 1977 to make service. The board denied Robbins' petition for reconsideration. When Questor served the deposition on March 23, 1977, after close of the testimony and briefing periods, Robbins again moved to strike, for noncompliance with the board's deadline. The board denied that motion, in view of a "misunderstanding" between Questor and the reporter. Robbins' petition to the Commissioner was denied.

Noting that toys and children's books are sold in the same channels of commerce to the same purchasers, the board sustained the opposition, finding the similarities between the marks and the numerous uses of the word "tinkertoy" and illustrations of interconnected dowels and spools in Robbins' book "sufficient to lead purchasers and prospective purchasers to mistakenly assume that the book emanates from or is in some way associated with the producer of 'TINKERTOY' toys." (199 USPQ at 366–67). The board dismissed Robbins' counterclaim, finding it unsupported by evidence and inconsistent with Robbins' licensing program position. (199 USPQ at 364–66).

*Issues*

The issues presented are whether the board erred in (1) denying the motion to strike, (2) sustaining the opposition, or (3) dismissing the counterclaim.

## OPINION

### (1) *Motion to Strike*

Jurisdiction over appeals from the board is governed by Section 21(a)(1) of the Lanham Act (Act), 15 U.S.C. § 1071(a)(1):

[A] party to an opposition proceeding, * * * [or a] party to a cancellation proceeding, * * * who is dissatisfied with the *decision* of the Commissioner or Trademark Trial and Appeal Board, may appeal to the United States Court of Customs and Patent Appeals * * *. [Emphasis added]

██ Interlocutory decisions are reviewable on appeal of the final judgment only if "logically related" to the basic substantive issues in the case. *Palisades Pageants, Inc. v. Miss America Pageant*, 442 F.2d 1385, 1388, 58 CCPA 1225, 1228, 169 USPQ 790, 792, *cert. denied*, 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 251, 171 USPQ 641 (1971); *Hercules Inc. v. National Patent Development Corp.*, 524 F.2d 1227, 1228, 187 USPQ 668, 669 (Cust. & Pat.App.1975). A purely procedural issue, like that raised by Robbins' motion to strike for untimeliness, is not sufficiently related to be reviewable here.

The basic appealable issues here are likelihood of confusion and descriptiveness of Questor's mark. Whether the board granted or denied the motion to strike would not determine the outcome or preclude a determination of either issue. The board's denial of Robbins' motion to strike was neither a dispositive decision adjudicating a right nor a decision sufficiently related to the merits of the appealable issues to warrant appellate review. Hence Robbins' appeal, insofar as it relates to the motion to strike, is dismissed.

### (2) *Opposition*

██ In determining likelihood of confusion, consideration is given to the marks, the goods described in the application and registration, and all the circumstances bearing on the marketing environment. *Industrial Nucleonics Corp. v. Hinde*, 475 F.2d 1197, 1199, 177 USPQ 386, 387 (Cust. & Pat.App.1973); *In re E.I. duPont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (Cust & Pat.App.1973). The over-

---

**3.** Rule 125(a) reads:

(a) One copy of the transcript of testimony (taken in accordance with § 2.123(e) through (h) or § 2.124), together with copies of documentary exhibits, shall be served on each adverse party within 30 days after completion of the taking of such testimony. The certified transcript and exhibits and one copy of the transcript shall be filed in the Patent and Trademark Office as promptly as possible.

all commercial impression derived from viewing the marks in their entireties is controlling. *New England Fish Co. v. The Hervin Co.*, 511 F.2d 562, 563, 184 USPQ 817, 818 (Cust. & Pat.App.1975). A mark's fame can influence its breadth of protection. *Tiffany & Co. v. Tiffany Tile Corp.*, 345 F.2d 214, 215, 52 CCPA 1396, 1397, 145 USPQ 483, 483 (1965). The marks need not be used on directly competing goods, any relation likely to lead purchasers into assuming a common source being sufficient. See *Sterling Drug Inc. v. Sebring*, 515 F.2d 1128, 1132, 185 USPQ 659, 652 (Cust. & Pat.App.1975). Evidence of the applicant's intent is probative, but not conclusive where confusion is otherwise unlikely. *Kramer Trenton Co. v. Walcutt*, 408 F.2d 479, 480, 56 CCPA 1026, 1027–28, 161 USPQ 228, 229 (1969); *Shoe Corp. of America v. Juvenile Shoe Corp. of America*, 266 F.2d 793, 795, 46 CCPA 868, 871, 121 USPQ 510, 512 (1959); *Lever Brothers Co. v. Riodela Chemical Co.*, 41 F.2d 408, 411, 17 CCPA 1272, 1276–77, 5 USPQ 152, 154–55 (1930).

Questor and its predecessors engaged in substantial advertising and sales of TINKERTOY construction sets. Individuals within the toy industry testified that TINKERTOY is one of the better known trademarks.

Robbins' and Questor's marks are not without similarity, "tinker" being a common element.[4] Robbins' design depicts Questor's toy construction product. That Questor has no exclusive rights in the shape of those toys[5] does not destroy its right to rely on its registration as evidence of its exclusive right to use TINKERTOY with those or other forms of children's building blocks and to resist a registration when likelihood of confusion exists. Incorporation of a design depicting another's product, in a mark including a term similar to that other's word mark, must in this case be viewed as contributing to a likelihood of confusion.

Questor's games, toys, and children's building blocks, and Robbins' children's books, all have a common marketing environment, being sold generally in toy stores and toy departments of retail stores to the same purchasers.[6]

Robbins was well aware of Questor's TINKERTOY mark when it adopted its own mark. Like the promotional material Robbins used in the licensing program, Robbins' mark was created specifically to produce and highlight an association between Robbins' mark and the TINKERTOY mark. A mark designed to maximize association between entities, as here, is likely to lead to confusion in the absence of a proper license relationship between those entities.

We sustain the finding of likelihood of confusion.

### (3) *Cancellation*

Under Section 7(b) of the Act, 15 U.S.C. § 1057(b),[7] registrations are pre-

---

**4.** Robbins' reliance on third-party registrations of marks containing "tinker" is unpersuasive where, as here, confusion appears likely in view of all the evidence.

**5.** Questor's utility patents on the toy construction sets, Nos. 1,113,371, 1,198,263, and 1,916,634, have expired.

**6.** The board improperly emphasized the *contents* of the book submitted as a specimen. (199 USPQ at 366–67). Likelihood of confusion occurs upon observance of the mark and goods. It need not await a reading of the book. The mark, not the specimen, is submitted for registration. The application was for children's books generally, not for a particular book. Although consideration of a specimen is appropriate, *Phillips Petroleum Co. v. C. J. Webb, Inc.*, 442 F.2d 1376, 1378, 58 CCPA 1255, 1257, 170 USPQ 35, 36 (1971), and may in a proper case reflect an intent, likelihood of confusion must be decided on the *class* of goods involved. *In re Superior Outdoor Display, Inc.*, 478 F.2d 1388, 1391, 178 USPQ 153 (Cust. & Pat. App.1973). For that reason, Robbins' offer to *delete from the specimen book all reference to TINKERTOY* is irrelevant.

**7.** Section 7(b) provides:
  § 1057. Certificates of registration
  \*   \*   \*   \*   \*   \*
  (b) Certificate as prima facie evidence
    A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.

sumed valid. One seeking cancellation must rebut that presumption by a preponderance of evidence. *Massey Junior College, Inc. v. Fashion Institute of Technology,* 492 F.2d 1399, 1403, 181 USPQ 272, 275 (Cust & Pat.App.1974).[8]

Under Section 14(c) of the Act, 15 U.S.C. § 1064(c),[9] registrations of marks that have become common descriptive names can be cancelled. Common descriptive names, being incapable of indicating source, are the antitheses of trademarks. *Roux Laboratories, Inc. v. Clairol Inc.,* 427 F.2d 823, 829, 57 CCPA 1173, 1181, 166 USPQ 34, 39 (1970). That a mark includes common English words does not render it incapable of functioning as a trademark, *see, e. g., Maremont Corp. v. Air Lift Co.,* 463 F.2d 1114, 59 CCPA 1152, 174 USPQ 395 (1972); *In re The Chesapeake Corporation,* 420 F.2d 754, 57 CCPA 838, 164 USPQ 395 (1970), because marks are considered as a whole. *See Tektronix, Inc. v. Daktronics, Inc.,* 534 F.2d 915, 916–17, 189 USPQ 693, 694 (Cust. & Pat.App.1976). It is enough that purchasers can rely on a mark to distinguish products emanating from different sources, and a mark need not identify a specific source. *Humble Oil & Refining Co. v. American Oil Co.,* 405 F.2d 803, 819, 160 USPQ 289, 301 (CA8), *cert. denied,* 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969); *cf. E.I. duPont de Nemours & Co. v. Celanese Corp.,* 167 F.2d 484, 35 CCPA 1061, 1067–69, 488–90, 77 USPQ 364, 367–69 (1948).

Whether the relevant purchasing public regards a term as a common descriptive name is a question of fact to be resolved on the evidence. *Bayer Co. v. United Drug Co.,* 272 F. 505, 509 (S.D.N.Y.1921) (L. Hand, J.). Purchaser testimony, consumer surveys, and listings in dictionaries, trade journals, newspapers and other publications, are useful evidence.

We agree with the board's careful analysis of Robbins' documentary exhibits (199 USPQ at 365–66) and see no value in reiterating it here. We conclude, as did the board, that "this material falls ruefully short of establishing that 'TINKERTOY' is devoid of trademark significance." *Questor Corp. v. Dan Robbins & Associates, Inc., supra* at 365.[10]

Robbins' attempt to analogize the TINKERTOY mark to the CELLOPHANE mark, declared generic in *Du Pont Cellophane Co., Inc. v. Waxed Products Co., Inc.,* 85 F.2d 75, 30 USPQ 332 (CA2), *cert. denied,* 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936), is not supported by adequate proof. The attack made here on the board for an alleged failure to "even consider the possibility that the fame of TINKERTOY might be as the generic name of the product, not otherwise" borders the irresponsible, the board having expressly determined that:

> This material clearly does not support applicant's claim that 'TINKERTOY' is a common descriptive name in the toy field and graphically demonstrates what was

---

**8.** The board's indication that "due caution" and "most careful consideration of all the facts and circumstances" are required in cancellation proceedings "as distinguished from an opposition or an ex parte proceeding" (citing older case) was inaccurate. (199 USPQ at 364–65). A preponderance is required, as are caution and careful consideration, in every case. That a preponderance may be more difficult to establish in some cases than in others does not justify a broad difference in decisional approach. *Massey Junior College, Inc. v. Fashion Institute of Technology, supra* at 1403, 181 USPQ at 275; *Dept. of Justice v. Calspan Corp.,* 578 F.2d 295, 300–301, 198 USPQ 147, 150–51 (Cust. & Pat.App.1978). On the present record, the board's misstatement does not affect the outcome here.

**9.** Section 14(c) provides in pertinent part:

§ 1064. Cancelation of registration

A verified petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed by any person who believes that he is or will be damaged by the registration of a mark on the principal register established by this chapter, or under the Act of March 3, 1881, or the Act of February 20, 1905—

\* \* \* \* \* \*

(c) at any time if the registered mark becomes the common descriptive name of an article or substance \* \* \*.

**10.** The exhibits were not part of the certified record. Our conclusions rest on the board's detailed and uncontested description of the exhibits.

We express no view on the board's implied alternate holding that Robbins' activities in the licensing program estop him from denying validity of the mark TINKERTOY.

alluded to above, namely, that applicant was hardput to come up with any material which could support its position herein.

(199 USPQ at 366).

Relying primarily on argument, Robbins says Questor, as pioneer of a new product, was not concerned with legal "niceties" associated with preserving its trademark. That unsupported statement is completely at odds with the presumption of validity set forth above, as is this attempt by Robbins to improperly shift the burden of proof to Questor:

> The fame of "TINKERTOY" was and now is not disputed. However, such is not the slightest indication that it *is not a common descriptive name.* "Telephone", "gasoline" and "cellophane" are equally famous. When first adopted, they were not inherently descriptive. But now they are common descriptive names.

Similarly, the contention that the board required of Robbins too high a burden of proof must fall. The board's opinion, read as a whole, demonstrates that it simply found Robbins' evidence so weak as to be inadequate under any reasonable standard.

Robbins say the board erred in finding that Questor asserted no exclusive rights in the construction toys sold under its mark, and accuses Questor of using the mark to achieve an "unlimited monopoly" in contravention of the "public policy against impeding competition." The argument begs the question, Robbins having failed to prove that TINKERTOY is the common descriptive name of Questor's toys.

We sustain the dismissal of the counterclaim.

### Conclusion

Robbins' appeal, insofar as it relates to the motion to strike, is dismissed. The decisions of the board sustaining Questor's opposition and dismissing Robbins' counterclaim for cancellation are *affirmed.*

AFFIRMED.