The **LOGLAN INSTITUTE, INC.**, Appellant,

v.

The **LOGICAL LANGUAGE GROUP, INC.**, Appellee.

No. 91–1254.

United States Court of Appeals, Federal Circuit.

April 28, 1992.

Wesley R. Parsons, Adorno & Zeder, Miami, Fla., argued for appellant.

William F. Herbert, Staas & Halsey, Washington, D.C., argued for appellee.

Before PLAGER, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

The Loglan Institute, Inc. (Institute), appeals the final decision of the Trademark Trial and Appeal Board (Board) in Cancellation No. 18,026 (February 4, 1991). The Board granted The Logical Language Group, Inc.'s (Language Group) motion for summary judgment, holding that the Institute's mark, LOGLAN, is generic and ordered the registration cancelled. We affirm.

## BACKGROUND

In 1955, Dr. James Brown invented a "logical language" which was designed to test the theory that natural languages limit human thought. It has been described by Dr. Brown as "symbolic logic made speakable" which "derives its word-stock impartially from the eight most widely spoken natural languages and so is culturally and politically neutral as well as suitable for cross-cultural linguistic experimentation." Dr. Brown coined the word "Loglan" (derived from *log*ical *lan*guage) to designate the new language. He first used the term Loglan in a publication in 1956; several years later, in 1962, he formed the Institute to promote the development and use of Loglan. On August 17, 1987, the Institute applied for registration of Loglan as a

mark for "Dictionaries and Grammars." The registration issued on April 12, 1988.

Apparently unhappy with the Institute's progress in developing the language, a member of the Institute left and in November 1988 founded the Language Group. In February 1989, the Language Group published a newsletter regarding the progress of its logical language. In the newsletter, several references were made to Loglan, prompting the Institute to threaten the Language Group with a trademark infringement suit.

On May 23, 1989, the Language Group petitioned the Board to cancel the Institute's registration of the mark Loglan, alleging that Loglan is merely a contraction of, or generic name for a logical language. The Language group also contended that the application for registration had been fraudulently made, or, if a trademark ever existed for Loglan, the mark had been abandoned. After both parties moved for summary judgment, the Board granted the Language Group's motion and ordered cancellation on the ground that Loglan is "a generic designation identifying a language rather than a trademark to indicate the source of goods." Additionally, the Board found that the application had not been fraudulently made and that the abandonment issue was moot. The Board refused to consider the affirmative defenses raised by the Institute, stating that some were not within the Board's jurisdiction and others were not good defenses against a charge of genericness. The Institute argues here that the Board erred in holding that Loglan was a generic term and in refusing to consider the affirmative defenses.

## DISCUSSION

### A. Summary Judgment

■ The requirements for granting summary judgment in a trademark cancellation proceeding are the same as in any other case, *viz.*, that there be no genuine issue of material fact and the movant be

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)[1]; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). We review the propriety of summary judgment *de novo*. *National Cable Tel. Ass'n, Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1427 (Fed.Cir. 1991).

The parties agree that the factual issues underlying genericness are undisputed. Though genericness itself has been categorized as a question of fact, *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 639, 19 USPQ2d 1551, 1552 (Fed.Cir.1991); *Dan Robbins & Assoc., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014, 202 USPQ 100, 105 (CCPA 1979), the parties have each moved for summary judgment on that question. The Board considered the lengthy affidavits and numerous exhibits each party submitted in support of its motion, and concluded that Loglan was generic. Our review requires us to determine whether, based on the evidence of record, the Board was correct in that conclusion. After examining the record, we do not believe the Board erred in concluding that the Language Group was entitled to judgment as a matter of law.

### B. Genericness

■ The Lanham Act provides for the cancellation of a mark which is or has become the generic name for goods or services. 15 U.S.C. § 1064(3) (1988). While a trademark registration has a presumption of validity, in a cancellation proceeding that presumption may be rebutted by evidence from the party seeking cancellation. *Dan Robbins*, 599 F.2d at 1014, 202 USPQ at 105. Before the Board, the Language Group presented numerous pieces of evidence to show that Loglan is used generically to designate a logical language.

■ The parties do not dispute that if Loglan is used generically to designate a language, the term cannot properly be reg-

1. The Federal Rules of Civil Procedure govern proceedings before the Trademark Trial and Appeal Board. 37 C.F.R. § 2.116(a) (1991).

istered as a trademark for "dictionaries and grammars" any more than English can be registered for a dictionary. That Loglan is not as well known as English is immaterial. Because a language is not "goods" or "services" under the Act, 15 U.S.C. § 1127 (1988), a name originated for a new language is inherently not registrable for the language. By the same token, a generic name of a language alone cannot function as a trademark to indicate origin of a dictionary describing that language. Thus, our determination hinges on whether the Board was correct in concluding that the term Loglan is, "a generic designation identifying a language."

■ The Institute argues that the relevant public does not perceive Loglan as generic, but rather sees it as indicating a single source of the language. The public's perception is the primary consideration in a determination of genericness. *See In re Merrill Lynch*, 828 F.2d 1567, 1569–70, 4 USPQ2d 1141, 1142 (Fed.Cir.1987); *H. Marvin Ginn Corp. v. Int'l. Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 991, 228 USPQ 528, 530 (Fed.Cir.1986).

■ The Institute concedes that the relevant public is "the small group of persons who have written about the language or have been involved in the invented language research effort as well as those to whom the Loglan language has been or is being marketed." The Institute's definition of "relevant public" is consistent with this court's reading of the term as encompassing both "actual [and] potential purchasers of ... goods or services." *Magic Wand*, 940 F.2d at 641, 19 USPQ2d at 1553. Evidence of what the relevant public understands the term to mean may come from direct consumer testimony, surveys, dictionary listings, newspapers, and other publications. *Merrill Lynch*, 828 F.2d at 1570, 4 USPQ2d at 1143; *Dan Robbins*, 599 F.2d at 1014, 202 USPQ at 105. Although in many situations a survey is desirable to establish the public's perception, given the limited size of the relevant group here, the numerous examples submitted by the parties are sufficient to determine how the relevant group perceives the term Loglan.

The evidence indicates that Dr. Brown himself has used the term Loglan only in a generic sense. For example, in 1984, Brown stated to the Institute's membership:

> I'm insisting on moving in the right direction for Loglan whether this means losing control of the institute I founded or not.... You can always write me if you still want to talk to me about Loglan, or to help me in putting it to use. As a private person I shall always be available to my old Loglandian friends.... Loglan may not suffer very much.... Health permitting I'll still write those couple of books. Perhaps with my example others will too.

His encouragement for others to write Loglan books or books in Loglan negates the claim now asserted of proprietary rights in Loglan.

Also, the Institute published a book, entitled "Loglan (1): A Logical Language." Included in the 1989 version is the statement

> In my English idiolect, as in Loglan and French, words like "loglanist", "loglandic" and "loglandical" are general terms like "cat" and "dog" (i.e., common nouns or adjectives) and therefore uncapitalized, whereas words like "Loglan" and "Loglandia" are singular terms (words with single designata, like "John" or "Greenland") and therefore capitalized. Both Loglan and French are more fastidious about such logical matters than Standard English.

As he stated, Loglan is a name for a language like French or English. Based on all this evidence, the Board had adequate basis to conclude that both Brown and the Institute adopted the term Loglan as the generic name of a language.

The Institute argues that no one else has used the term Loglan in a generic fashion and that by capitalizing Loglan in its newsletter, the Language Group itself treats the term in a non-generic manner. We disagree. Capitalization is the correct form for the name of a language, *e.g.*, English, French, or German (*see* Webster's Ninth New Collegiate Dictionary 1549 (1985));

thus it is compatible with generic use. Moreover, the Language Group's own logical language, "Lojban", is referred to as a type of Loglan. The Language Group refers to "[Brown's] version of 'Loglan' " and states that "Lojban is indeed a Loglan."

In addition to generic use of the term Loglan by the Institute and the Language Group, others have so used the term. Numerous letters have been written to the Language Group inquiring about Loglan, requesting to be maintained on its Loglan mailing lists, and even inquiring about the status of the Loglan language being developed by the Language Group. The fact that the "consuming public" would write to someone other than the Institute regarding the Loglan language indicates that third parties understand Loglan to be a generic term; this understanding did not arise only from actions of the Language Group. Rather, the Language Group and the public merely followed the generic usage of the Institute.

C.  Equitable Defenses

■  As part of its answer, the Institute alleged various affirmative defenses, including the equitable defenses of unclean hands, estoppel, fraud, acquiescence, and waiver. The Board found that the unclean hands, fraud, and estoppel defenses were based on allegations of trade secret theft and infringement and therefore were not within the jurisdiction of the Board. Further, the Board stated that the equitable defense of acquiescence was not valid against the claim that the mark was generic. We affirm.

Application of these defenses must be considered in light of the clear purpose of the Trademark Act that a registered mark may be cancelled at any time on the ground that it is generic, 15 U.S.C. § 1064(3), and also in light of the Board's discretionary power to apply the defenses.

To support the defenses of unclean hands, estoppel, and fraud, the Institute pleaded that the Language Group "wrongfully acquired the trade secrets of the [Institute] ..., and has converted and used such trade secrets to [Language Group]'s benefit.... [and that the Language Group] wrongfully used the mark 'Loglan' in interstate commerce ..., thereby infringing on [the Institute's] trademark." As pleaded, these defenses are essentially claims of trademark infringement and unfair competition premised on the Institute's assertion of trademark rights in Loglan. The Institute also alleges that after it demanded that the Language Group stop using its "mark," the latter acquiesced and ceased using Loglan to designate its logical language.

The Lanham Act specifically provides that "[i]n all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied," 15 U.S.C. § 1069. While the Board must consider such defenses, we determine that it properly exercised its discretion in not allowing the defenses to prevail here. As the Board stated, these defenses cannot override the controlling fact that Loglan is the generic name for a language and that it cannot therefore be a trademark for dictionaries. The Board did not err in declining to apply the defenses, as the public interest in a cancellation proceeding to rid the register of a generic mark transcends them. The Board may have erred in stating that it lacked jurisdiction over the defenses, but that error was harmless under the circumstances.

We, of course, do not rule on whether the Institute may have an action against the Language Group on any matters of unfair competition. The record here simply shows that the term Loglan has never been a trademark, but rather entered the public domain as a generic name from the time of its inception.

## CONCLUSION

The decision of the Board is therefore AFFIRMED.