THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
27 March 2007

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

In re Fiesta Palms, LLC

_____

Serial No. 76595049

_____

Lauri S. Thompson for Greenberg Traurig LLP for Fiesta Palms, LLC.

Scott Sisun, Trademark Examining Attorney, Law Office 110 (Chris A.F. Pedersen, Managing Attorney).

_____

Before Seeherman, Drost, and Mermelstein, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On May 28, 2004, Fiesta Palms, LLC, a Nevada limited liability company located in Las Vegas, Nevada (applicant), applied to register the mark CLUB PALMS MVP (in standard character form) on the Principal Register for "casino services" in Class 41. The application (No. 76595049) contains an allegation of a date of first use anywhere and in commerce of April 1, 2004, and a disclaimer of the word "Club." Applicant also claims ownership of several registrations including Nos. 2,736,238; 2,781,330;

2,969,615; and 2,969,616 for such marks as CLUB PALMS, CLUB PALMS All STAR, and CLUB PALMS HALL OF FAMER for casino, resort, or entertainment services.

The examining attorney[1] has refused to register applicant's mark under Section 2(d) of the Trademark Act (15 U.S.C. § 1052(d)) because of a prior registration for the mark MVP (in typed or standard character form) for "casino services offered to preferred customers identified by special identification cards" in Class 41. The registration (No. 1,572,506) issued December 19, 1989, and it was subsequently renewed. The registrant is currently identified as Harrah's Operating Company, Inc., a Delaware Corporation, located in Las Vegas, Nevada.

When the refusal was made final, applicant filed this appeal.

When the issue is likelihood of confusion, we analyze the facts as they relate to the relevant factors set out in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). See also In re Majestic Distilling Co., 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003); and Recot, Inc. v. Becton, 214 F.3d 1322, 54 USPQ2d 1894, 1896 (Fed. Cir. 2000).

---

[1] The current examining attorney was not the original examining attorney in this case.

We begin our analysis by comparing applicant's and registrant's services. Applicant's services are casino services while registrant's services are casino services offered to preferred customers identified by special identification cards. Inasmuch as we do not read limitations into applicant's identification of services, its casino services would include all types of casino services including casino services offered to preferred customers identified by special identification cards. Therefore, the services must be considered to be identical inasmuch as they overlap. Octocom Systems, Inc. v. Houston Computers Services Inc., 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed"). See also Paula Payne Products v. Johnson Publishing Co., 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973) ("Trademark cases involving the issue of likelihood of confusion must be decided on the basis of the respective descriptions of goods").

In addition, when "marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines." Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992).

We add that inasmuch as the services are overlapping, we must assume that the purchasers and channels of trade are also the same.

> Where the goods in the application at issue and/or in the cited registration are broadly identified as to their nature and type, such that there is an absence of any restrictions as to the channels of trade and no limitation as to the classes of purchasers, it is presumed that in scope the identification of goods encompasses not only all the goods of the nature and type described therein, but that the identified goods are offered in all channels of trade which would be normal therefor, and that they would be purchased by all potential buyers thereof.

In re Jump Designs LLC, 80 USPQ2d 1370, 1374 (TTAB 2006). See also In re Elbaum, 211 USPQ 639, 640 (TTAB 1981).

Next, we compare the similarities and dissimilarities of the marks in the application and registration. Applicant's mark is CLUB PALMS MVP while registrant's mark is for the letters MVP by themselves. Neither applicant's nor registrant's mark is shown with any stylization so our comparison must be based on the terms in the marks, CLUB

PALMS MVP and MVP.  It is clear that the marks are similar because they both contain the identical term MVP and they differ because applicant's mark includes the words CLUB PALMS.

At this point, we note that the letters "MVP" stand for "Most Valuable Player."  *The Random House Dictionary of the English Language (unabridged)* (2d ed. 1987).[2]  See also, www.acronymfinder.com (MVP – Most Valuable Player (sports)).[3]  Most Valuable Player awards are commonly awarded to players on sports teams.  See, e.g., www.baseball-almanac.com (Major League Baseball); http://football.about.com (National Football League); www.wnba.com (Women's National Basketball Association); and http://charlotte49ers.com (college sports).[4]

Applicant agrees that the term "'MVP' is defined in relation to a sports term in some dictionaries" but goes on to argue that it is "widely recognized for its non-sport use."  Reply Brief at 4.  We note that applicant's example of a non-sports reference is to the use of the term to

---

[2] We take judicial notice of this definition.  University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).
[3] Denial of Request for Reconsideration.
[4] Denial of Request for Reconsideration.

refer to a "valued employee" and not a casino patron.[5]

Applicant argues that "the mark MVP, when used in conjunction with 'casino services offered to preferred customers identified by special identification cards' is descriptive and weak … Furthermore, the Board has held that if the marks in question are highly suggestive or merely descriptive or play upon commonly used or registered terms, the addition of a housemark, suggestive or commonly used or registered term may sufficiently distinguish the marks." Reply Brief at 3 (emphasis omitted). See also Brief at 6 ("Appellant respectfully submits that although Registrant was granted a federal registration for its mark MVP, the term 'MVP' is descriptive when used to identify 'casino services offered to preferred customers identified by special identification cards'").

Before we begin our discussion of the marks, we point out that this is an ex parte proceeding, and applicant is not permitted to overcome a refusal by arguing that a cited registration is merely descriptive. The Court stated in In

---

[5] Applicant relies for support for this example on an entry in an online encyclopedia, which it submitted with its reply brief. The submission is untimely and therefore is not properly of record. 37 CFR § 2.142(d). Nor will we take judicial notice of this online reference work. In re Total Quality Group, Inc., 51 USPQ2d 1474, 1476 (TTAB 1999).

re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531,

1534-35 (Fed. Cir. 1997):

> Dixie's argument that DELTA is not actually used in
> connection with restaurant services amounts to a
> thinly-veiled collateral attack on the validity of the
> registration. It is true that a prima facie
> presumption of validity may be rebutted. See Dan
> Robbins & Assocs., Inc. v. Questor Corp., 599 F.2d
> 1009, 1014, 202 USPQ 100, 105 (CCPA 1979). However,
> the present ex parte proceeding is not the proper
> forum for such a challenge. Id. ("One seeking
> cancellation must rebut [the prima facie] presumption
> by a preponderance of the evidence."); Cosmetically
> Yours, Inc. v. Clairol Inc., 424 F.2d 1385, 1387, 165
> USPQ 515, 517 (CCPA 1970); TMEP Section 1207.01(c)(v)
> (1993); 3 J. Thomas McCarthy, *McCarthy on Trademarks
> and Unfair Competition* Section 23.24[1][c] (3d ed.
> 1996). In fact, Cosmetically Yours held that "it is
> not open to an applicant to prove abandonment of [a]
> registered mark" in an ex parte registration
> proceeding; thus, the "appellant's argument … that
> [a registrant] no longer uses the registered mark …
> must be disregarded." 424 F.2d at 1387, 165 USPQ at
> 517; cf. In re Calgon Corp., 435 F.2d 596, 598, 168
> USPQ 278, 280 (CCPA 1971) (applicant's argument that
> its use antedated a registered mark was effectively an
> improper collateral attack on the validity of
> the registration, which should have been made in
> formal cancellation proceedings).

See also Hecon Corporation v. Magnetic Video Corporation,

199 USPQ 502, 507 (TTAB 1978) ("Applicant has also

contended that the term 'COPYCORDER' is 'particularly

descriptive' of opposer's goods and thus is entitled to but

a limited scope of protection. Aside from the fact that

the term 'COPYCORDER' is, in our opinion, only suggestive

as applied to either opposer's or applicant's goods, the

assertion of descriptiveness constitutes a collateral

attack upon the validity of opposer's pleaded registration and as such cannot be entertained herein in the absence of a counterclaim to cancel the same"). Therefore, inasmuch as the cited mark is registered on the Principal Register, we must assume that it is at least suggestive and we cannot entertain applicant's argument that the registered mark is descriptive of registrant's services.

We now move on to the main question in this case, which is whether the addition of applicant's house mark CLUB PALMS to the registered mark MVP results in marks that are dissimilar. There have been numerous cases over the years that have reached different conclusions on whether the addition of a house mark avoids confusion. It has long been held that the addition of a trade name or house mark to a registered mark does not generally avoid confusion. Menendez v. Holt, 128 U.S. 514, 521 (1888). "However, there is no arbitrary rule of law that if two product marks are confusingly similar, likelihood of confusion is not removed by use of a company or housemark in association with the product mark." New England Fish Company v. The Hervin Company, 511 F.2d 562, 184 USPQ 817, 819 (CCPA 1975)(BLUE MOUNTAIN KITTY O's and KITTY not similar). In these cases, we must, of course, consider the entire marks,

including the presence of the house mark in applicant's mark in light of the evidence of record.

The board has described the different effects the addition of a house mark to a registered mark can have in a likelihood of confusion case:

> [S]uch addition may actually be an aggravation of the likelihood of confusion as opposed to an aid in distinguishing the marks so as to avoid source confusion. On the other hand, where there are some recognizable differences in the asserted conflicting product marks or the product marks in question are highly suggestive or merely descriptive or play upon commonly used or registered terms, the addition of a housemark and/or other material to the assertedly conflicting product mark has been determined sufficient to render the marks as a whole sufficiently distinguishable.

In re Christian Dior, S.A., 225 USPQ 533, 534 (TTAB 1985) (citations omitted) (Applicant's LE CACHET DE DIOR confusingly similar to the registered mark CACHET).

In this case, the common term in the marks, MVP, is identical. Therefore, such cases as Rockwood Chocolate Co. v. Hoffman Candy Co., 372 F.2d 552, 152 USPQ 599 (CCPA 1967), involving non-identical terms, are not as relevant. (ROCKWOOD BAG-O-GOLD for candy not confusingly similar to CUP-O-GOLD for candy).

When, as in this case, the common part of the marks is identical, purchasers familiar with the registrant's mark are likely to assume that the house mark simply identifies

what had previously been an anonymous source.  In In re

Hill-Behan Lumber Company, 201 USPQ 246 (TTAB 1978), the

board explained that:

> Thus, for purposes herein, the "LUMBERJACK" marks of
> the parties are identical.  In such a situation, the
> addition of applicant's house mark "HILL-BEHAN'S"
> thereto is not deemed sufficient to distinguish the
> marks as a whole and to avoid confusion in trade.
> This is especially so when one considers that a
> trademark or a service mark identifies an anonymous
> source so that the average consumer in the marketplace
> is, more often than not, unaware of the producer of
> the goods sold under a mark and often doesn't care, so
> long as the quality of the goods identified by the
> mark remains the same.  Thus, if those individuals
> familiar with registrant's "LUMBERJACK" products were
> to encounter "HILL-BEHAN'S LUMBER JACK" stores at
> which lumber products are sold, there is nothing to
> preclude them from assuming that "HILL-BEHAN" is the
> source of the "LUMBERJACK" products and has
> established retail outlets to market them.  Whether it
> be confusion of source or sponsorship, the likelihood
> of such confusion is there and, as a consequence,
> registrant's registered mark is a bar to the
> registration sought by applicant.

Id. at 249-50.  See also In re C.F. Hathaway Co., 190 USPQ

343 (TTAB 1976) (HATHAWAY GOLF CLASSIC for knitted sports

shirts confusingly similar to GOLF CLASSIC for men's hats).

However, more recently, the board was faced with a

situation in which applicant sought registration of the

mark NORTON McNAUGHTON ESSENTIALS for clothing items and

the examining attorney refused registration because of a

registration for ESSENTIALS for some of the identical

clothing items.  Knight Textile Corp. v. Jones Investment

Co., 75 USPQ2d 1313 (TTAB 2005). In that case, the board held: "In terms of overall commercial impression, we find that although the word ESSENTIALS is the entirety of the commercial impression created by opposer's mark, in applicant's mark it contributes relatively less to the mark's commercial impression than does the house mark NORTON MCNAUGHTON. This is because … we find that the word ESSENTIALS is highly suggestive as applied to the parties' clothing items and as it appears in both parties' marks, especially in applicant's mark." Id. at 1315.

As evidence of the highly suggestive nature of ESSENTIALS, the board relied on a definition of "essentials" as connoting that "the clothing items sold under the marks are basic and indispensable components of, or 'essentials' of, one's wardrobe" as well as third-party registrations of ESSENTIALS marks that applicant made of record. Id. at 1316. The evidence of third-party registrations consisted of "twenty-three extant ESSENTIALS registrations on the register in the clothing field, registered to twenty-one different owners." Id.

Applicant makes similar arguments to those reflected in the board's Knight Textile opinion. See, e.g., Reply Brief at 3-4 ("[T]he term 'MVP' has a defined and widely known meaning as an acronym that stands for 'Most Valuable

11

Player,' and it often [is] used in the context of sports or sporting event.  However, Appellant respectfully submits that the acronym 'MVP' is used more broadly than just in the sports world").

Applicant also argues (Brief at 6):

Furthermore, a cursory search of the USPTO website led to the discovery of 173 records using the term "MVP" as all or part of a trademark.  Out of these 173 references utilizing the term "MVP" in a trademark sense, 123 of them are currently registered for a variety of goods and services.  Due to widespread use of the term "MVP," the average customer is certainly aware that "MVP" is used by many different providers of goods and/or services and will not automatically assume that any and all entities using the term are related.  In other words, consumers have been inundated with the various unrelated trademark uses of the term "MVP;" thus, there is little probability that they will be confused as to the origin of the goods and/or services provided under the numerous "MVP" marks.

The examining attorney responded to this "evidence" by arguing that:

Applicant's mere list of registrations in its "cursory search of the USPTO website," should not be considered as part of the record.  It is well held [sic] that the mere submission of a list of registrations does not make a registration part of the record… The applicant has not provided the Board with copies of the registration[s] and it is respectfully requested that the list provided not be considered as part of the record.

In the alternative, should the Board allow applicant's list of registered marks to be considered as part of the record, the Trademark Examining Attorney respectfully submits that a search of third-party registrations incorporating the term "MVP" in the context of *casino and/or gaming services* returned only

one registered mark – the registered mark at issue now before the board, MVP.  The registered mark's strength is therefore bolstered by the fact that no other marks bearing the term "MVP" are registered for use in connection with casino and/or gaming services.

Brief at unnumbered pp. 11-12 (Citation to record omitted).

Finally, applicant responds (Reply Brief at 5-6) as follows:

While Appellant is aware that the list[6] of registrations and live applications[7] printed from the USPTO official website is not the proper form to introduce evidence of third-party registrations into the record, it respectfully urges this Board to consider this list, not as evidence of the individual registrations for the mark MVP, but rather as evidence of the prevalent and common use of the acronym MVP under a wide variety of circumstances.  It is this kind of use on which Appellant bases its argument that consumers are accustomed to seeing the acronym in commerce used in connection with a variety of goods and services, and not just as a sports term. Appellant did not feel it was necessary to [sic] for the Board to be inundated with printouts of hundreds of pages of registrations and applications just to make the point that the acronym MVP is widely used and highly recognized by the consuming public at large. In Appellant's opinion, that is readily shown by the list of hundreds of registrations and applications incorporating the acronym MVP and the fact that a

---

[6] Although applicant and the examining attorney referred to a "list" in their briefs, it does not appear that applicant submitted an actual "list," but merely discussed the number of records it had found.  Whether or not an actual list was submitted is irrelevant, however, because, as discussed, any such list would not affect our decision.

[7] Pending applications, even if they were of record, are "competent to prove only the filing thereof."  Olin Corp. v. Hydrotreat, Inc., 210 USPQ 62, 65 n.5 (TTAB 1981).

simple "Google" search[8] turns up millions of hits where the term MVP is used outside of sports reference.

There are numerous problems with applicant's argument. First, we must decide cases on the basis of the record, and as even applicant appears to admit, a list of registrations does not make the registrations of record. In re Duofold, Inc., 184 USPQ 638, 640 (TTAB 1974). Second, while "third-party registrations can be used in the manner of a dictionary definition to illustrate how a term is perceived in the trade or industry," In re Box Solutions Corp., 79 USPQ2d 1953 (TTAB 2006), without these registrations or some other evidence, we cannot conclude that the term "MVP" is highly suggestive as the term "Essentials" was held to be in the Knight Textile case. Third, even if third-party registrations were properly made of record, they are not evidence that the mark MVP is in use. AMF Inc. v. American Leisure Prods., Inc., 474 F.2d 1403, 177 USPQ 268, 269 (CCPA 1973) ("The existence of [third-party] registrations is not evidence of what happens in the market place or that customers are familiar with them"). Fourth, even if there were evidence that MVP is used for non-related goods or services, this would hardly establish by itself that it is

---

[8] We add that the Google search report that applicant references in its Reply Brief is not of record.

14

weak for casino services. SBS Products Inc. v. Sterling Plastic & Rubber Products Inc., 8 USPQ2d 1147, 1149 n.6 (TTAB 1988) ("[E]ven if evidence of such third-party use were submitted, it would be of no aid to respondent herein where the third-party usage was for goods unrelated to either petitioner's skin care products or respondent's stuffing box sealant").

Finally, we address the applicant's comments that it did not want to inundate the board "with printouts of hundreds of pages of registrations." Certainly, the board does not wish to be inundated with hundreds of pages of cumulative information. However, applicant loses sight of the fact that ultimately we must decide the case based on the evidence of record and not on what either the examining attorney or applicant argues the facts are. As we cautioned in In re Planalytics Inc., 70 USPQ2d 1453, 1457 (TTAB 2004) (footnote omitted):

> If an applicant has relevant information, it is incumbent on applicant to make this information of record. A mere reference to a website does not make the information of record. In order to review the facts in this case, there should be evidence in the record.

We now turn to a comparison of the marks, keeping in mind as we noted earlier, that the only difference between the marks is the addition of applicant's house mark to

registrant's MVP mark.  The question then becomes whether that additional house mark results in marks that are dissimilar enough that confusion is not likely. Applicant's house mark is a difference between the marks, but we conclude that it does not result in marks that are dissimilar for likelihood of confusion purposes.  Unlike the party in Knight Textile, applicant has not submitted evidence that the term MVP is so highly suggestive that the inclusion of its house mark would create significant differences in the marks' appearance, pronunciation, meaning, and commercial impression.  In addition, applicant has not submitted any evidence that the term MVP is used by others in the casino field or that it has any specific meaning in that field other than the general dictionary meaning of a "most valuable player," which is often used in the field of sports.  See, e.g., In re Broadway Chicken Inc., 38 USPQ2d 1559, 1565 (TTAB 1996) ("[W]e conclude that the evidence offered by applicant is sufficient to establish prima facie that a significant number of third parties are using trade names/service marks containing the term BROADWAY for restaurant/'eating place' services, as well as for goods and services related thereto").  Because applicant has not demonstrated that MVP is a highly suggestive term for casino services, the addition of the

house mark CLUB PALMS is not sufficient to distinguish these otherwise identical marks, and the marks CLUB PALMS MVP and MVP are similar in sound, appearance, meaning, and connotation.

Therefore, we conclude that, based on the evidence of record, when we consider that applicant's identified services include registrant's services and that the marks contain the identical common term, the addition of applicant's house mark does not eliminate the likelihood of confusion. Consumers familiar with registrant's MVP mark for its casino services are likely to believe that there is some association or sponsorship with applicant's CLUB PALMS MVP casino services. Indeed, a consumer who has been told about the advantages of registrant's MVP casino services is likely to believe that the CLUB PALMS MVP casino services is simply the now identified source of the previously anonymous MVP casino services. To the extent that we have any doubts, we resolve them, as we must, in registrant's favor. In re Hyper Shoppes (Ohio), Inc., 837 F.2d 463, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988); In re Pneumatiques, Caoutchouc Manufacture et Plastiques Kleber-Colombes, 487 F.2d 918, 179 USPQ 729, 729-30 (CCPA 1973); and Jump Designs, 80 USPQ2d at 1376.

Decision:  The examining attorney's refusal to register applicant's mark under Section 2(d) of the Trademark Act is affirmed.