Hearing Date: October 27, 2020           Mailed: June 15, 2021

┌─────────────────────────┐
│ **This Opinion is a** │
│ **Precedent of the TTAB** │
└─────────────────────────┘

UNITED STATES PATENT AND TRADEMARK OFFICE

\_\_\_\_\_

Trademark Trial and Appeal Board

\_\_\_\_\_

*Philanthropist.com, Inc.*

*v.*

*The General Conference Corporation of Seventh-Day Adventists*

\_\_\_\_\_

Cancellation Nos. 92065178 and 92065255

\_\_\_\_\_

C. Alexander Chiulli of Barton Gilman LLP
    for Philanthropist.com, Inc.

Bassam N. Ibrahim, Bryce J. Maynard and Laura K. Pitts
   of Buchanan Ingersoll & Rooney, P.C.
     for The General Conference Corporation of Seventh-Day Adventists.

\_\_\_\_\_

Before Mermelstein, Greenbaum and Hudis,
 Administrative Trademark Judges.

Opinion by Hudis, Administrative Trademark Judge:

    The General Conference Corporation of Seventh-Day Adventists ("Respondent") is

the owner of record of two registrations on the Principal Register for the mark

ADVENTIST (in standard characters) for:

**Registration No. 1176153** (the "'153 Registration"):

Religious books, magazines, pamphlets, newsletters, brochures, encyclopedias, dictionaries, commentaries, fliers, bulletins, booklets and bibles, in International Class 16.

Establishment and administration of employee health care and benefit programs and medical insurance programs, in International Class 36.

Film production and distribution services, in International Class 41.

Health care services-namely, hospital, dental, pharmaceutical, nursing home, and medical laboratory services, in International Class 42.[1]

and

**Registration No. 1218657** (the "'657 Registration"):

Educational instruction services in academics at grade school, high school and college levels, in International Class 41.

Religious observances and missionary services, in International Class 42.[2]

## I.    Background

On January 13, 2017, Petitioner sought cancellation of Respondent's ADVENTIST registrations on multiple grounds. Petitioner filed Cancellation No. 92065178 against the '153 Registration, and Cancellation No. 92065255 against the '657 Registration. The Board subsequently consolidated the proceedings,[3] directing that all further papers be filed in Cancellation No. 92065178 as the "parent case." From this point

---

[1] Registration No. 1176153 was issued on November 3, 1981; renewed.

[2] Registration No. 1218657 was issued on November 30, 1982; renewed.

[3] Consolidation Order in Cancellation No. 92065178, 8 TTABVUE; Consolidation Order in Cancellation No. 92065255, 8 TTABVUE. Citations to the record or briefs in this opinion also include citations to the publicly available documents on TTABVUE, the Board's electronic docketing system. *See, e.g.*, *Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014). The number preceding "TTABVUE" corresponds to the docket entry number; the number(s) following "TTABVUE" refer to the page number(s) of that particular docket entry.

forward in our decision, unless otherwise stated, all citations to the record are to Cancellation No. 92065178.

## A. Pleadings

After Respondent filed two motions to dismiss the original Petitions for Cancellation pursuant to Fed. R. Civ. P. 12(b)(6), Petitioner filed a Second Amended Petition for Cancellation ("Second Amended Petition") that is now Petitioner's operative complaint in these consolidated proceedings.[4] Petitioner's Second Amended Petition seeks cancellation of the '153 and '657 Registrations pursuant to Trademark Act Section 14(3), 15 U.S.C. § 1064(3), on the ground that Respondent's ADVENTIST mark is generic as to the goods and services identified in the registrations. Notably, Petitioner only paid the fee to cancel three of the four classes of goods and services in the '153 Registration in Cancellation No. 92065178, omitting any claim against the '153 Registration for the services in Class 36 – as is reflected in the ESTTA filing cover sheet, the original petition to cancel and the Institution Notice.[5]

---

[4] 15 TTABVUE.

[5] Petition to Cancel and Institution Notice in Cancellation No. 92065178, 1, 2 TTABVUE. "ESTTA" is the acronym for the Board's Electronic System for Trademark Trials and Appeals. When a petition to cancel is filed against a multiple class registration, a party should specify which classes they are seeking to cancel. Trademark Rule 2.111(d), 37 C.F.R. § 2.111(d); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 304 (2020). Here, Petitioner listed only three classes in the ESTTA cover sheet and in its original pleading. In addition, Petitioner only paid fees to cover three classes and never submitted additional fees with the amended complaint. A cancellation is commenced by the filing of a petition with the required fee. Trademark Rule 2.111(a), 37 C.F.R. § 2.111(a). At no time during the proceeding did Petitioner seek to submit an additional fee to add Class 36 to its complaint against the '153 Registration. The services recited in Class 36 of Respondent's '153 Registration are not subject to the Second Amended Petition in Cancellation No. 92065178 either. 30 TTABVUE 8.

Respondent denied the salient allegations of the Second Amended Petition in its Answers.[6]

## B. Respondent's Summary Judgment Motion

On September 29, 2018, Respondent moved for summary judgment, challenging Petitioner's entitlement to assert its claim (formerly known as standing) and the merits of Petitioner's genericness claim.[7] For our purposes, the salient portions of the Board's Order denying (in its entirety) Respondent's summary judgment motion[8] are as follows:

- The services recited in Class 36 of Respondent's '153 Registration are not subject to the Second Amended Petition in Cancellation No. 92065178.[9]

---

[6] Answer in Cancellation No. 92065178, 17 TTABVUE Answer in Cancellation No. 92065255, 18 TTABVUE. Other than "lack of standing," Respondent did not address the asserted putative "affirmative defenses," and they are **forfeited**. *See, e.g.*, *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020); *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1752 n.6 (TTAB 2013), *aff'd*, 565 F. App'x 900 (Fed. Cir. 2014); *Miller v. Miller*, 105 USPQ2d 1615, 1616 n.3 (TTAB 2013). We further note many are not true "affirmative defenses" (e.g., failure to state a claim, lack of standing, failure to establish harm) or available against a claim of genericness (i.e., laches and acquiescence). *See John W. Carson Found. v. Toilets.com, Inc.*, 94 USPQ2d 1942, 1949 (TTAB 2010) (asserted defense of failure to state a claim is not a true affirmative defense because it relates to an assertion of the insufficiency of the pleading); *Loglan Inst., Inc. v. Logical Language Grp., Inc.*, 962 F.2d 1038, 22 USPQ2d 1531, 1534 (Fed. Cir. 1992) ("[T]he public interest in a cancellation proceeding to rid the register of a generic … [term] transcends … [the equitable defenses of laches, estoppel, and acquiescence]."). Standing, which we now refer to as entitlement to a statutory cause of action, is an element of Petitioner's asserted claim that Petitioner must prove as part of its case. *See Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982); *Blackhorse v. Pro Football Inc.*, 98 USPQ2d 1633, 1637 (TTAB 2011). Finally, Respondent's attempt to reserve the right to add defenses is improper under the Federal Rules of Civil Procedure, because that would not give Petitioner fair notice of such defenses. *See FDIC v. Mahajan*, 923 F. Supp. 2d 1133, 1141 (N.D. Ill. 2013) ("[A]ffirmative defenses that purport to reserve the right to add affirmative defenses at a later date … are stricken because they are improper reservations under the Federal Rules.").

[7] Respondent's Motion for Summary Judgment, 22-24, 27 TTABVUE; Petitioner's Summary Judgment Opposition, 28 TTABVUE; Respondent's Reply, 29 TTABVUE.

[8] Board Order of March 28, 2019, 30 TTABVUE.

[9] *Id.* at 2 n.2.

- There is a genuine dispute of material fact as to Petitioner's standing, including, at a minimum, whether Petitioner has a reasonable belief of damage through potential legal action from Respondent.[10]

- The evidence submitted in connection with the motion for summary judgment was of record only for consideration of that motion. To be considered at final hearing, any such evidence must be properly introduced in evidence during the appropriate trial period.[11]

The Board thereafter denied Respondent's motion to reopen discovery, and the parties proceeded to trial.[12]

## II. Summary of Decision

The case is fully briefed. The parties appeared before a panel of the Board for an oral hearing. Having considered the evidentiary record, the parties' arguments and applicable authorities, as explained below, we find that Petitioner has not demonstrated its entitlement to maintain its genericness claim, *Lipton Indus.*, 213 USPQ at 189, and therefore deny the petitions to cancel Respondent's '153 and '657 Registrations.

---

[10] *Id*. at 5.

[11] *Id*. at 9.

[12] Board Order of October 3, 2019, 35 TTABVUE 5.

## III. The Evidentiary Record/Respondent's Evidentiary Objections

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the files of Respondent's involved registrations. A list of the additional evidence submitted by the parties (including the short-form names we applied to this evidence) is set forth in **Appendix A**, attached. Our rulings on Respondent's evidentiary objections to Petitioner's evidence are set forth in **Appendix B**, attached.

## IV. The Parties and their Underlying Dispute

### A. Respondent: The General Conference Corporation of Seventh-Day Adventists

Respondent is a District of Columbia corporation established to hold title to the assets of the Seventh-day Adventist Church (the "Church"), including its trademarks.[13] The Church is a worldwide Protestant Christian religious denomination distinguished by its belief in the imminent Second Coming of Jesus Christ and related Bible teachings designed to prepare people for that event; including observance of the Sabbath.[14] Respondent asserts that the name "Adventist" has been used since 1863 to identify members and believers belonging to the Church.[15]

---

[13] U.S. Reg. Nos. 1176153 and 1218657; *Gen. Conf. Corp. of Seventh-day Adventists v. McGill*, 617 F.3d 402, 96 USPQ2d 1190, 1192 (6th Cir. 2010).

[14] Wahlen Report to Wahlen Decl, 49 TTABVUE 7, ¶ 4.

[15] *Id.* at 10, ¶ 13.

The Church has over 1 million members and over 5,000 churches in the United States alone.[16] The Church also operates in the United States hundreds of primary and secondary schools, numerous colleges and universities, hundreds of health care institutions including hospitals, more than 20 radio stations, and two satellite television networks.[17] The Church additionally has two publishing houses in the United States, Pacific Press Publishing Association ("Pacific Press") and the Review and Herald Publishing Association ("Review and Herald").[18] Pacific Press publishes and distributes a full line of Adventist books, magazines, music, digital media, and other publications and materials, including online.[19] At various times, these entities also publish, or have published, the ADVENTIST REVIEW (the official news magazine of the Church) and ADVENTIST WORLD (a monthly magazine focusing on global issues affecting the Church).[20]

### B. Petitioner: Philanthropist.com, Inc.

Petitioner is involved in the acquisition and sale of domain names.[21] Its business practice is to register domain names, hold them for a year or two, and then let the registrations go un-renewed if there is no re-sale interest.[22]

---

[16] Trim Decl, 58 TTABVUE 3, ¶¶ 8-10.

[17] *Id*. at 3, ¶ 11.

[18] Galusha Decl, 55 TTABVUE 2, ¶ 4.

[19] *Id*. at 3, ¶ 6.

[20] Knott Decl, 59 TTABVUE 3, ¶¶ 4-5, 8.

[21] Everett Testim Depo, 61 TTABVUE 10.

[22] *Id*. at 15-16.

As of February 2020, Petitioner was in possession of 9,100 registrations for domain names. Petitioner uses many of these domain names to redirect to its philanthropist.com website; approximately 5,500-6,000 of them are available for re-sale. In the last two years (2019-20), Petitioner received less than $50,000 in revenue from the sale of roughly 10 to 20 domain names. This is the company's primary source of revenue.[23]

Petitioner advertises its domain names for sale via landing webpages bearing sale prices when the domain names are accessed on the Internet. An interested buyer fills out an online contact form, which generates a link sent to Petitioner. Petitioner, in turn, decides whether to consummate the sale.[24] Petitioner also advertises its domain names for re-sale on the BPDN.com and BuyPremiumDomainNames.com websites,[25] and had also done so for a time in print publications and flyers (which Petitioner no longer does).[26]

### C. The Domain Name Dispute

Petitioner acquired (registered) the domain name adventist.com,[27] at a purchase price of $8,811.[28] Petitioner originally offered to sell the adventist.com domain name to potentially interested buyers for $120,000.[29] On November 10, 2016, Respondent

---

[23] *Id*. at 11-13.

[24] *Id*. at 13-14.

[25] *Id*. at 14-15.

[26] *Id*. at 16, 19.

[27] Everett Testim Depo, 61 TTABVUE 20.

[28] Resp NOR, Everett Discov Depo, 62 TTABVUE 28-29, 82.

[29] Resp NOR, 61 TTABVUE 86, Int Ans No 18.

sent a cease and desist letter to Petitioner advising of Respondent's rights in the ADVENTIST mark and demanding transfer of the domain name to Respondent.[30] After receiving Respondent's letter, Petitioner raised the sale price to $1.2 million.[31] When Petitioner refused to willingly transfer the domain name (without compensation),[32] on or about December 8, 2016, Respondent filed a complaint with the National Arbitration Forum (the "Forum") under the Uniform Domain Name Resolution Procedure ("UDRP") seeking a ruling that the adventist.com domain name should be transferred to Respondent.[33]

Petitioner filed the original cancellation petitions in these proceedings on January 13, 2017, while the UDRP proceeding was still pending.[34] On January 23, 2017, the Forum issued a decision in favor of Petitioner, directing that the adventist.com domain name remain with Petitioner.[35]

### D. Facts and Circumstances following the UDRP Decision

Respondent never appealed the Forum's decision in Petitioner's favor. Since January 2017, except to litigate these consolidated proceedings, Petitioner and

---

[30] Second Amended Petition 15 TTABVUE 3, 14-17, ¶¶ 3-5, Exh B; Answer to Second Amended Petition, 17 TTABVUE 3, ¶¶ 3-5; Resp NOR, 62 TTABVUE 89, Int Ans No 24; Everett Testim Depo, 61 TTABVUE 20-21, 32-33.

[31] Resp NOR, 62 TTABVUE 87-88, Int Ans Nos 20-21; Resp NOR, Everett Discov Depo, 62 TTABVUE 24-25.

[32] Everett Testim Depo, 61 TTABVUE 116.

[33] Second Amended Petition 15 TTABVUE 3-4, 18-39, ¶¶ 2, 7, Exh C; Answer to Second Amended Petition, 17 TTABVUE 2-3, ¶¶ 2, 7; Everett Testim Depo, 61 TTABVUE 33-34.

[34] Petition to Cancel in Cancellation No. 92065178, 1 TTABVUE; Petition to Cancel in Cancellation No. 92065255, 1 TTABVUE.

[35] Second Amended Petition 15 TTABVUE 4, 40-58, ¶ 7, Exh D; Respondent's Motion for Summary Judgment, 22 TTABVUE 4.

Respondent have had no further communications with one another.[36] Respondent has taken no further legal action against Petitioner, nor has Respondent further threatened to do so,[37] such as filing a domain name or trademark related civil action.

While Petitioner has previously offered the adventist.com domain name for sale, it no longer actively does so.[38] In fact, Petitioner did not respond in September 2016 when one potential buyer inquired,[39] and in June 2017 refused to sell the domain name when it received a second purchase inquiry from someone else.[40] Since June 2018, no one has contacted Petitioner with any further offers to purchase the adventist.com domain or to express an interest in doing so.[41]

At no time has Petitioner published content on the Internet at any website resolving to the adventist.com domain name.[42] And currently the domain name redirects Internet users to the TTABVUE docket page for these proceedings.[43]

Petitioner believes that it remains under threat of legal action from Respondent for as long as Petitioner owns the adventist.com domain name; this is based upon

---

[36] Everett Testim Depo, 61 TTABVUE 35 Resp NOR, Everett Discov Depo, 62 TTABVUE 21-22.

[37] Everett Testim Depo, 61 TTABVUE 35; Resp NOR, Everett Discov Depo, 62 TTABVUE 20-21.

[38] Everett Testim Depo, 61 TTABVUE 42-44, 46-49, 152-56, Exhs 4-5.

[39] Everett Testim Depo, 61 TTABVUE 38-41, 151-54, Exhs 2-3; Resp NOR, Everett Discov Depo, 62 TTABVUE 37.

[40] Everett Testim Depo, 61 TTABVUE 23-24, 36-38, 148-49, Exh 1; Resp NOR, Everett Discov Depo, 62 TTABVUE 32-35.

[41] Everett Testim Depo, 61 TTABVUE 26, 38-41, 102-03.

[42] Resp NOR, Everett Discov Depo, 62 TTABVUE 39-40.

[43] Everett Testim Depo, 61 TTABVUE 42.

Respondent's 2016 cease-and-desist letter.[44] Petitioner also believes that Respondent's ownership of the ADVENTIST trademark registrations interferes with its ability to sell the adventist.com domain name at its desired price.[45] Because of this, Petitioner refuses to sell the domain name to anyone until the cancellation proceedings have concluded.[46] On the other hand, no one has told Petitioner that they would pay more for the adventist.com domain name if not for Respondent's trademark registrations; Petitioner has not spoken with anyone to this effect.[47] Petitioner moreover has not submitted any evidence demonstrating that Respondent's ownership of the ADVENTIST trademark registrations has interfered or will interfere with Respondent's ability to sell the adventist.com domain name for a profit.

## V. Entitlement to a Statutory Cause of Action

Entitlement to a statutory cause of action is a threshold issue that must be proven by the plaintiff in every *inter partes* case. *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014). Petitioner must maintain its entitlement to the statutory cause of action throughout the proceeding and affirmatively prove its existence at the time of trial by introducing evidence to support the allegations in its pleading that relate to such entitlement as an element of its case-in-chief. *See Lipton Indus.*, 213 USPQ at 189; *Apollo Med. Extr. Techs., Inc.*

---

[44] Resp NOR, Everett Discov Depo, 62 TTABVUE 22-24.

[45] Everett Testim Depo, 61 TTABVUE 104-05; Resp NOR, Everett Discov Depo, 62 TTABVUE 29-31.

[46] Everett Testim Depo, 61 TTABVUE 21-23; Resp NOR, Everett Discov Depo, 62 TTABVUE 27.

[47] Everett Testim Depo, 61 TTABVUE 45-46.

*v. Med. Extr. Techs., Inc.*, 123 USPQ2d 1844, 1848 (TTAB 2017), *rev'd on other grounds by stipulation pursuant to settlement agreement*, No. 3:17-cv-02150-AJB-MSB (S.D. Cal. Apr. 13, 2021); *see also* TBMP § 309.03(b) ("Allegations in support of standing which may be sufficient for pleading purposes must later be affirmatively proved by the plaintiff at trial (or on summary judgment).").

To establish entitlement to a statutory cause of action under Trademark Act Section 14, 15 U.S.C. § 1064, a plaintiff must demonstrate "an interest falling within the zone of interests protected by the statute and … proximate causation." *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *4 (Fed. Cir.) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 109 USPQ2d 2061, 2067-70 (2014)), *cert. denied*, ___ S. Ct. ___ (2020).[48]

Stated another way, a plaintiff is entitled to a statutory cause of action by demonstrating a real interest in the proceeding and a reasonable belief of damage. *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020); *see also Empresa Cubana*, 111 USPQ2d at 1062. According to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), there is "no meaningful, substantive difference between the analytical frameworks expressed in *Lexmark* and *Empresa Cubana*." *Corcamore*, 2020 USPQ2d 11277 at *4. Thus, "a party that demonstrates a real interest in cancelling a

---

[48] Our decisions have previously analyzed the requirements of Trademark Act Sections 13 and 14, 15 U.S.C. §§ 1063-64, under the rubric of "standing." We now refer to this inquiry as entitlement to a statutory cause of action. Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting Trademark Act Sections 13 and 14 remain applicable.

trademark under [Trademark Act Section 14, 15 U.S.C.] § 1064 has demonstrated an interest falling within the zone of interests protected by [the Trademark Act]. … Similarly, a party that demonstrates a reasonable belief of damage by the registration of a trademark demonstrates proximate causation within the context of § 1064." *Corcamore*, 2020 USPQ2d 11277, at \*7.

When challenging a term as generic, a plaintiff often will attempt to establish its entitlement to a statutory cause of action by showing that it is engaged in the sale of goods or provides services that are the same as or related to those covered by the challenged mark. *See Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prods. Co.*, 23 USPQ2d 1878, 1879 (TTAB 1992), *aff'd*, 994 F.2d 1569, 26 USPQ2d 1912 (Fed. Cir. 1993); *Int'l Dairy Foods Assn. v. Interprofession du Gruyère*, 2020 USPQ2d 10892, at \*10 (TTAB 2020), *civil action filed*, No. 1:20-cv-01174-TSE-TCB (E.D. Va. Oct. 6, 2020). That is not the situation we have here. While Petitioner may attempt to establish its entitlement to maintain this proceeding in another way, we find that it has not been successful in doing so.

Clearly, "a petitioner [need not] have a proprietary right in its own mark in order to demonstrate a cause of action before the Board." *Australian Therapeutic*, 2020 USPQ2d 10837, at \*3. Rather, "any person who believes that he is or will be damaged … by the registration of a mark on the [P]rincipal [R]egister" may petition to cancel a registration. 15 U.S.C. § 1064. However, there are limits to this statutory right – that is, the cancellation plaintiff must meet the "zone of interests" and "proximate causation" tests set out in *Lexmark*, 109 USPQ2d at 2068-70.

"The purpose of the zone-of-interests test is to 'foreclose[] suit ... when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue.'" *Corcamore*, 2020 USPQ2d 11277, at *7 (quoting *Lexmark*, 109 USPQ2d at 2068 (citation and quotation marks omitted)). "Likewise, a purpose of the real-interest test is to 'distinguish [parties demonstrating a real interest] from mere intermeddlers or ... meddlesome parties acting as self-appointed guardians of the purity of the Register.'" *Id.* (quoting *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 217 USPQ 641, 648 (Fed. Cir. 1983) (citation and internal quotation marks omitted)).

The facts here have not changed very much since before Petitioner filed these cancellation proceedings. Petitioner registered the adventist.com domain name and advertised it for sale at a considerable profit. In November 2016, Respondent sent Petitioner a cease-and-desist letter asserting its rights in the ADVENTIST mark, demanding that Petitioner transfer the domain name under the threat of legal action. After Petitioner responded by substantially raising the sale price for adventist.com and refusing to transfer the domain name to Respondent, Respondent made good on its threat. In early December 2016, Respondent filed a UDRP proceeding with the Forum seeking a transfer of the domain name.

In late January 2017, the Forum rejected Respondent's UDRP complaint, thus allowing Petitioner to hold onto the domain name. Respondent did not appeal the

Forum's decision, and to date has not taken any further action or threatened further action against Petitioner or the adventist.com domain name (*in rem*) since then.

In 2016 and 2017, Petitioner spurned two inquiries from potential purchasers of the adventist.com domain name. Since June 2018, no one has contacted Petitioner expressing any desire to purchase the domain name. Nor has anyone told Petitioner that Respondent's trademark registrations have dampened interest in acquiring the domain name.

Moreover, Petitioner has never published content on the Internet at any website resolving to the domain name. All Petitioner has ever done with the adventist.com domain name is to hold it for future sale at an inflated price (a practice known as "warehousing"), or to redirect Internet users to the TTABVUE docket page for these proceedings.

Further calling into question Petitioner's entitlement to maintain these proceedings is that it: (i) only paid the fee to cancel three of the four classes of goods and services of the '153 Registration in Cancellation No. 92065178, and (ii) omitted any claim against the '153 Registration for the services in Class 36 – such that these services are not subject to the petition to cancel.[49] Thus, even if it obtained all the relief sought in these proceedings, Petitioner still ostensibly would remain under an alleged "legal threat" from Respondent due to Respondent's continued ownership of a federal registration for the ADVENTIST mark for "establishment and administration of employee health care and benefit programs and medical insurance programs."

---

[49] Board Order of March 28, 2019, 30 TTABVUE 2 n.2.

We find that Petitioner's interests, which do not have anything to do with trademark concerns (whether its own trademark concerns or concerns about how others' trademark rights might endanger its business model), are outside the zone of interests reflected in Trademark Act Section 14. Further, it cannot reasonably be assumed Congress intended to authorize a party in Petitioner's circumstances to bring and maintain these cancellation proceedings. *Corcamore*, 2020 USPQ2d 11277, at *7. We further find that Petitioner's claim of proximate causation (its belief in damage) has no "reasonable basis in fact." *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1027 (Fed. Cir. 1999). To the extent Petitioner's belief in damage may have existed at the time Petitioner brought these proceedings in January 2017, clearly it has not been maintained. We therefore conclude that Petitioner has not shown its entitlement to the statutory cause of action it asserts here.

**Decision**:

Petitioner's petitions to cancel Registration Nos. 1176153 and 1218657 in Cancellation Nos. 92065178 and 92065255 are denied.

## Appendix A
## The Parties' Evidentiary Submissions

### A.    Petitioner's Evidence

- Petitioner's First Notice of Reliance ("Pet 1st NOR"), with excerpts from the book titled HANDBOOK OF DENOMINATIONS IN THE UNITED STATES attached as an exhibit (36 TTABVUE).

- Petitioner's Second Notice of Reliance ("Pet 2nd NOR"), with additional excerpts from the book titled HANDBOOK OF DENOMINATIONS IN THE UNITED STATES attached as an exhibit (37 TTABVUE).

- Petitioner's Third Notice of Reliance ("Pet 3rd NOR"), with further excerpts from the book titled HANDBOOK OF DENOMINATIONS IN THE UNITED STATES, plus an online definition of "Adventist," excerpts from the book titled SEVENTH-DAY ADVENTIST YEARBOOK OF STATISTICS FOR 1889 and an entry for "Adventist" from the online WORLD RELIGIOUS ENCYCLOPEDIA attached as exhibits (38 TTABVUE).

- Petitioner's Fourth Notice of Reliance ("Pet 4th NOR"), with excerpts from the books titled SEARCH FOR IDENTITY: THE DEVELOPMENT OF SEVENTH-DAY ADVENTIST BELIEFS, A BRIEF HISTORY OF SEVENTH-DAY ADVENTISTS and IT'S OK NOT TO BE A SEVENTH-DAY ADVENTIST attached as exhibits (39 TTABVUE).

- Petitioner's Fifth Notice of Reliance ("Pet 5th NOR"), with excerpts from the book titled THE APOCALYPTIC VISION AND THE NEUTERING OF ADVENTISM and copies of cease and desist letters and responses (in 2007 and 2011) from Adventists not associated with Respondent attached as exhibits (40 TTABVUE).

- Petitioner's Sixth Notice of Reliance ("Pet 6th NOR"), with two law review articles, and three articles from ADVENTIST TODAY magazine, attached as exhibits (41 TTABVUE).

- Petitioner's Seventh Notice of Reliance ("Pet 7th NOR"), with an article from THE SAN DIEGO UNION-TRIBUNE, an article from PILGRIMS REST, organizational documents from various sects, groups and denominations associated with Adventism other than Respondent, and a TESS database printout of Registration No. 1177185 for the mark SEVENTH-DAY ADVENTIST attached as exhibits (42 TTABVUE).

- Petitioner's Eighth Notice of Reliance ("Pet 8th NOR"), with the Seventh-Day Adventist Church Trademark and Logo Usage, a copy of the Board's decision in *Stocker & Perry v. Gen. Conference Corp. of Seventh-Day Adventists*, Canc. Nos. 92017554 and 92018038 (TTAB 1996), and a WIKIPEDIA definition of "Adventism" attached (43 TTABVUE).

- Petitioner's Ninth Notice of Reliance ("Pet 9th NOR") with excerpts from the book titled SEVENTH-DAY ADVENTIST ENCYCLOPEDIA attached (44 TTABVUE).

- Petitioner's Tenth Notice of Reliance ("Pet 10th NOR") with excerpts from the books titled MELTON'S ENCYCLOPEDIA OF AMERICAN RELIGIONS, WILLIAM MILLER AND THE RISE OF ADVENTISM, and SEEKING A SANCTUARY: SEVENTH-DAY ADVENTISM AND THE AMERICAN DREAM attached (45 TTABVUE).

- Petitioner's Eleventh Notice of Reliance ("Pet 11th NOR") with excerpts from the books titled ORGANIZING FOR MISSION AND GROWTH: THE DEVELOPMENT OF ADVENTIST CHURCH STRUCTURE and RELIGION AND SOCIAL POLICY (46 TTABVUE).

## B.    Respondent's Evidence

- Testimony Declarations of:
  - Sara Parikh ("Parikh Decl"), survey expert, with exhibits (47 TTABVUE).
  - Jennifer Gray Woods ("Woods Decl"), Respondent's Associate General Counsel, with exhibits (48 TTABVUE).
  - Clinton Wahlen ("Wahlen Decl"), Associate Director at the Biblical Research Institute of Respondent, with exhibits (49 TTABVUE).
  - Dr. George W. Reid ("Reid Decl"), religious history expert (50 TTABVUE).
  - Terry Forde ("Forde Decl"), President and Chief Executive Officer of Adventist HealthCare, Inc. (51 TTABVUE).
  - Meredith Jobe ("Jobe Decl"), Vice President and General Counsel of Adventist Health System/West (52 TTABVUE).
  - Dr. Lisa Beardsley-Hardy ("Beardsley-Hardy Decl"), Director of Education for Respondent (53 TTABVUE).
  - Paul M. Karssen ("Karssen Decl"), General Counsel of the General Synod Council of the Reformed Church in America (54 TTABVUE).
  - Dale Galusha ("Galusha Decl"), President of Pacific Press Publishing Association, with exhibits (55 TTABVUE).
  - George R. Knight ("Knight Decl"), religious history expert, with exhibits (56 TTABVUE).
  - Jonah Perry ("Perry Decl"), a Docket Managing Clerk with Respondent's law firm, with exhibits (57 TTABVUE).
  - David Trim ("Trim Decl"), Director of the Office of Archives, Statistics, and Research of Respondent, with an exhibit (58 TTABVUE).

- o Bill Knott ("Knott Decl"), Executive Editor of the monthly publications titled ADVENTIST REVIEW and ADVENTIST WORLD, with exhibits (59 TTABVUE).

- o Kathy Bazil ("Bazil Decl"), a Legal Assistant with Respondent's law firm, with exhibits (60 TTABVUE).

- Transcript from the testimony deposition of James Douglas McGregor Everett ("Everett Testim Depo"), the principal of Petitioner, with exhibits (61 TTABVUE).

- Respondent's Notice of Reliance ("Resp NOR") with the following exhibits attached (62-67 TTABVUE):

  - o Excerpts from the discovery deposition transcript of James Douglas McGregor Everett ("Everett Discov Depo").

  - o Excerpts from Petitioner's Responses to Respondent's First Set of Interrogatories (Nos. 18-24).

  - o Copies of the following U.S. registrations showing on their face Respondent as the owner of record (but without indicating their current status and title): Reg. No. 5284292 (ADVENTIST HEALTH); Reg. No. 5446820 (SOUTHERN ADVENTIST UNIVERSITY); Reg. No. 3182406 (ADVENTIST WORLD); Reg. No. 2214034 (ADVENTIST HEALTHCARE); Reg. No. 1851435 (ADVENTIST REVIEW); and Reg. No. 1172224 (ADVENTIST HEALTH SYSTEM).

  - o Definitions of "Adventist" from NEW OXFORD AMERICAN DICTIONARY and CAMBRIDGE ADVANCED LEARNER'S DICTIONARY.

  - o Definition of "Seventh Day Adventist" from www.macmillandictionary.com.

  - o Wikipedia articles from:
    - https://en.wikipedia.org/wiki/Seventhday_Adventist_Church.
    - https://en.wikipedia.org/wiki/Seventhday_Adventist_theology

  - o Excerpts from the books titled ENCYCLOPEDIA OF RELIGION, WORLDMARK ENCYCLOPEDIA OF RELIGIOUS PRACTICES, CHRISTIANITY: THE FIRST THREE THOUSAND YEARS, RELIGION IN AMERICAN LIFE: A SHORT HISTORY, RELIGIOUS HISTORY OF AMERICA, and AMERICA'S RELIGIOUS HISTORY.

  - o Articles titled:
    - "What Seventh-day Adventists Believe" (CNN.COM).
    - "Adventists' back-to-basics faith is fastest growing U.S. Church" (USA TODAY).

- "As they turn 150, Adventists still praying for the Apocalypse" (WASHINGTON POST).
- "Ben Carson Puts Spotlight on Seventh-day Adventists" (NEW YORK TIMES).
- "A City That Runs on Faith" (LOS ANGELES TIMES).
- "The Lovely Hill: Where People Live Longer and Happier" (THE ATLANTIC).
- "Seventh-day Adventist Church one of world's fastest-growing Christian denominations" (GRAND RAPIDS PRESS).
- "Dr. Ben Carson's Life Story rests on a Deep Adventist Faith" (NEWSWEEK).
- "The Secrets of Long Life" (NATIONAL GEOGRAPHIC).
- "All Your Questions about Seventh-Day Adventism and Ben Carson Answered" (NPR.ORG).
- "Adventists grow as other churches decline" (THE CHRISTIAN CENTURY).
- "For real education reform, take a cue from the Adventists" (CHRISTIAN SCIENCE MONITOR).
- "The Season of Adventists: Can Ben Carson's Church Stay Separatist amid Booming Growth?" (CHRISTIANITY TODAY).
- "Adventists' Evangelical Temptation" (RELIGION WATCH).
- "Want a Long Life? No Worries; a Trip to a California 'Blue Zone' Reveals Some Secrets to Longevity" (BOSTON GLOBE).
- "A Community of the Faithful Worships on Saturday and Tries to Heal Every Day; Adventist-dominated Loma Linda Noted for Medical Center" (CHICAGO TRIBUNE).
- "Adventists Grapple with Embracing Diversity" (CHICAGO TRIBUNE).
- "Foreign Influence Gains in the Adventist Church" (NEW YORK TIMES).
- "Adventists Might Let Women Be Ordained" (WASHINGTON POST).
- "Evangelist Drove Adventist Church's Global Growth" (WASHINGTON POST).
- "Don't Set 'Thou Shalts' in Public Stone, Adventists Say" (CHICAGO TRIBUNE).

- Transcripts from broadcast media episodes:
    - "World News Tonight" on ABC.
    - "NPR Fresh Air" on National Public Radio.
- Web pages from:
    - https://www.pewresearch.org/fact-tank/2015/11/03/acloser-look-at-Seventh-day-adventists-in-america.
    - www.christadelphia.org.
    - www.cog7.org and https://cog7.org/about-us/
    - www.cogasoc.net.
    - www.coggc.org.
    - www.gci.org.
    - www.jw.org.
    - www.pcg.church and https://pcg.church/about.
    - www.ucg.org.
    - http://www.freesda.org/bereanchurch.html.
    - https://sdarm.org/aboutus/origin.
    - https://www.adventist.org/.
    - https://www.adventist.org/church/what-do-seventh-dayadventists-believe/.
    - https://www.nadadventist.org/about-our-church/whoare-adventists.
    - https://www.nadadventist.org/about-our-church/beliefs.
    - https://www.adventist.org/articles/trademark/.
    - https://www.adventist.org/trademark-and-logo-usage/.
    - https://www.hermistonadventist.org/notice.
    - https://www.bereatemple.org/notice.
    - https://adventisteducation.org/lgl.html.
    - https://www.eldoradoadventistschool.com/notice.
    - https://www.adventistretirement.org/legal-notice/.
    - https://www.adventistmediaministries.com/privacypolicy-terms-of-use/.
    - https://www.adventistyearbook.org/printed.
    - https://www.adventistworld.org/copyright/.

- https://www.adventsource.org/ministryplus/.
- articles/guidelines-for-strengthening-and-protecting-seventh-day-adventist-trademarks-554.
- https://www.adventistreview.org/2010-1516-24.
- https://www.adventist.org/beliefs/fundamental-beliefs/.
- https://buypremiumdomainnames.com/purchase/Adventist.com.

o Social media web pages from:
- https://www.facebook.com/CovenantAdvent/.
- https://www.facebook.com/TheAdventistChurch.
- https://www.instagram.com/adventistchurch/.
- https://twitter.com/adventistchurch.

o Excerpts from the books titled IT'S OKAY NOT TO BE A SEVENTH-DAY ADVENTIST, SEEKING SANCTUARY: SEVENTH-DAY ADVENTISM AND THE AMERICAN DREAM and HANDBOOK OF DENOMINATIONS IN THE UNITED STATES.

o Copies of the following third-party registrations (but without indicating their current status and title):
- U.S. Reg. No. 2133837 for the mark THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS.
- U.S. Reg. No. 1963567 for the mark THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS and Design.

### C. Petitioner's Rebuttal Evidence

- Petitioner's Rebuttal Notice of Reliance ("Pet Rebuttal NOR"), with the following exhibits attached (70-75 TTABVUE):
  o Excerpts from the books titled ADVENTISM CONFRONTS MODERNITY, WILLIAM MILLER AND THE RISE OF ADVENTISM, MELTON'S ENCYCLOPEDIA OF AMERICAN RELIGIONS, SEVENTH-DAY ADVENTIST ENCYCLOPEDIA, SEVENTH-DAY ADVENTIST BIBLE STUDENT'S SOURCE BOOK, and THE EDGES OF SEVENTH-DAY ADVENTISM.
  o Excerpts from issues of magazines titled ADVENTIST HERITAGE, A MAGAZINE FOR ADVENTIST HISTORY and ADVENTIST TODAY.
  o Rebuttal Testimony Declaration of Eve. J. Brown ("Brown Rebuttal Decl") with exhibit attached.
  o Web pages from:

- ADVENTIST TODAY website, at https://Atoday.org/contact-us.

- NEW YORK UNITED SABBATH DAY ADVENTIST CHURCH website, at http://NYUnitedSDA.org/Watch-Live.

- INTERNATIONAL ASSOCIATION OF FREE SEVENTH-DAY ADVENTISTS website, at http://FreeSDA.org/benefits.html.

## Appendix B

## Rulings on Respondent's Evidentiary Objections

### A. Respondent's Objections to Exhibits submitted with Petitioner's Notices of Reliance

Respondent objects to Petitioner's Notices of Reliance Exhibits Nos. 11, 15, 16, 20, on the grounds that they comprise Internet materials that do not include either the URL or the date accessed, or both, as required by Trademark Rule 2.122(e)(2), 37 C.F.R. § 2.122(e)(2).[50] Since Respondent did not promptly raise these objections by way of a motion to strike, they are **forfeited**. *Barclays Capital Inc. v. Tiger Lily Ventures Ltd.*, 124 USPQ2d 1160, 1163 (TTAB 2017) ("Objections to testimony or to a notice of reliance grounded in asserted procedural defects are waived unless raised promptly, when there is an opportunity to cure."); *City Nat'l Bank v. OPGI Mgmt. GP Inc./Gestion OPGI Inc.*, 106 USPQ2d 1668, 1672 (TTAB 2013) ("[a]ny shortcomings in respondent's original submission … under notice of reliance, such as its failure to identify the URL and when the document was actually accessed (either printed out or downloaded), are procedural deficiencies that were not timely raised by petitioner and thus have been [forfeited].").

### B. Respondent's Hearsay Objections

Respondent objects to each instance in which Petitioner relies upon Notice of Reliance exhibits for the truth of the matter asserted as impermissible hearsay, because of the absence of supportive testimony from a competent witness.[51] While we

---

[50] Respondent's Brief, 78 TTABVUE 58-63.

[51] *Id*. at 63-64.

do not accept Respondent's invitation to exclude or disregard altogether Petitioner's Notice of Reliance evidence, *McDonald's Corp. v. McSweet, LLC*, 112 USPQ2d 1268, 1274 (TTAB 2014), where these materials were properly introduced we will consider them only for what they show on their face. *TV Azteca, S.A.B. de C.V. v. Martin*, 128 USPQ2d 1786, 1790 (TTAB 2018) ("[N]ews articles may be used as evidence for what they show on their face, [but] they may not be relied on for truth of the statements contained therein."); *Ayoub, Inc. v. ACS Ayoub Carpet Svc.*, 118 USPQ2d 1392, 1399 n. 62 (TTAB 2016) ("Internet evidence, similar to printed publications, is only admissible for what it shows on its face, and … will not be considered to prove the truth of any matter stated therein."); *L.C. Licensing, Inc. v. Berman*, 86 USPQ2d 1883, 1887 (TTAB 2008) ("[A] newspaper article is probative only for what it shows on its face, not for the truth of the matters contained therein, unless a competent witness testifies to the truth of such matters.").

## C. Respondent's Objections to Exhibits submitted with Petitioner's Rebuttal Notice of Reliance as Improper Rebuttal

Respondent objects to Petitioner's Rebuttal Exhibits Nos. 1-10 submitted with its Rebuttal Notice of Reliance as constituting improper rebuttal.[52] During its testimony period, Respondent introduced numerous lay and expert testimony declarations and exhibits. Petitioner filed its Rebuttal Notice of Reliance to introduce additional exhibits to rebut Respondent's extensive submissions filed during its case-in-chief. Petitioner's Rebuttal Notice of Reliance specifically sets forth Respondent's particular

---

[52] *Id.* at 64-66.

evidence or testimony being rebutted, as well as each submission's specific relevance to the matter in the proceeding. The majority of Petitioner's rebuttal evidence consists of extensions of excerpts submitted during Petitioner's opening testimony period. *See Hunter Publ'g Co. v. Caulfield Publ'g Ltd.,* 1 USPQ2d 1996, 1997 n.2 (TTAB 1986) (rebuttal materials that constituted full text or expanded version of previously noticed exhibits were properly part of the record and considered by the Board).

Rebuttal evidence is "submitted for the proper purpose of denying, explaining or discrediting [Respondent's] case." *Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 USPQ2d 1629, 1632 (TTAB 2007). "The function of rebuttal evidence is to explain, repel, counteract, or disprove the evidence of the adverse party." *Apollo Med. Extr. Techs., Inc. v. Med. Extr. Techs., Inc.*, 123 USPQ2d 1844, 1847 (TTAB 2017) (citing *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 116 USPQ2d 1869, 1883 (Fed. Cir. 2015)), *rev'd on other grounds by stipulation pursuant to settlement agreement*, No. 3:17-cv-02150-AJB-MSB (S.D. Cal. Apr. 13, 2021). "The fact that evidence might have been offered in chief does not preclude its admission as rebuttal." *Data Packaging Corp. v. Morning Star, Inc.*, 212 USPQ 109, 113 (TTAB 1981). In view of Petitioner's explanations as noted above, we find that Petitioner's Rebuttal Exhibits Nos. 1-10 constitute proper rebuttal, and therefore **overrule** Respondent's objections.

### D. Respondent's Objections to Petitioner's Rebuttal Declaration and accompanying Exhibit

Respondent objects to the Rebuttal Testimony Declaration of Eve. J. Brown, Petitioner's former counsel, as well as the exhibit attached to her Declaration.[53] The attached exhibit comprises an e-mail exchange between Ms. Brown and Steve Lawson, the Executive Director of the Advent Christian General Conference. Mr. Lawson's part of the e-mail exchange itself refers to a separate e-mail exchange he had with Respondent's in-house counsel. The subject matter of the exchanges concerns whether members of a third-party not affiliated with Respondent refer to themselves as "Adventists."[54]

Respondent objects to Ms. Brown's Declaration and the attached e-mail exchange on the grounds that Ms. Brown was not identified in Petitioner's Rebuttal Pre-Trial Disclosures, and that the e-mail exchange comprises multiple levels of hearsay without a recognized exception. When testimony is presented by affidavit or declaration, but was not covered by an earlier pretrial disclosure, the remedy is the prompt filing of a motion to strike, Trademark Rules 2.121(e) and 2.123(e)(3)(i), 37 C.F.R. §§ 2.121(e) and 2.123(e)(3)(i); TBMP § 533.02(b) (2020), which Respondent did not do. Respondent's objection to Ms. Brown's Declaration and attached exhibit on the ground that Ms. Brown was not identified in Petitioner's Rebuttal Pre-Trial Disclosures is therefore **forfeited**.

---

[53] *Id.* at 64-67.

[54] Brown Rebuttal Decl and exhibit, 75 TTABVUE 12-17.

On the other hand, Ms. Brown's Declaration and the attached e-mail exchange do comprise multiple levels of hearsay statements made by several out-of-court declarants. Petitioner offers this evidence for the truth of whether members of a third-party not affiliated with Respondent refer to themselves as "Adventists," and as such this evidence is inadmissible hearsay. Fed. R. Evid. 801, 802. The only exception Petitioner offers to the rule against hearsay is the residual exception of Fed. R. Evid. 807.[55] Among other requirements, the residual hearsay exception only applies if the proponent of the statement(s) provides the adverse party with reasonable notice of its intent to offer them, Fed. R. Evid. 807(b), which Petitioner did not do. Respondent's objection to Ms. Brown's Declaration and attached exhibit on the grounds that it comprises inadmissible hearsay without a recognized exception is therefore **sustained**.

### E. Respondent's Objections to Petitioner's Reliance on Statements Made in, or Exhibits Attached to, the Second Amended Petition

Respondent objects to Petitioner's reliance in its main brief on statements made in, or exhibits attached to, Petitioner's Second Amended Petition that were not properly presented as evidence made of record during the parties' testimony periods.[56] Petitioner responds that such statements or exhibits either were admitted by Respondent, are part of the record elsewhere, or otherwise present no prejudice to Respondent as a result of their consideration by the Board at final hearing.[57]

---

[55] Petitioner's Rebuttal Brief, 79 TTABVUE 23.

[56] Respondent's Brief, 78 TTABVUE 68-72.

[57] Petitioner's Rebuttal Brief, 79 TTABVUE 22.

Statements made in pleadings cannot be considered as evidence on behalf of the party making them; such statements must be established by competent evidence during the time for taking testimony. However, statements in pleadings may have evidentiary value as an opposing party's statement. *See Saul Zaentz Co. v. Bumb*, 95 USPQ2d 1723, 1725 n.7 (TTAB 2010) (assertions in answer not evidence unless supported by evidence introduced at trial or except as admission against interest); *Kellogg Co. v. Pack'Em Enters. Inc.*, 14 USPQ2d 1545, 1548 n.6 (TTAB 1990) (pleadings have evidentiary value only to the extent they contain opponent's admissions against interest), *aff'd*, 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991).

"Except as provided in … [Trademark Rule 2.122(d)(1) (as to plaintiff's pleaded registration(s))], an exhibit attached to a pleading is not evidence on behalf of the party to whose pleading the exhibit is attached, and must be identified and introduced in evidence as an exhibit during the period for the taking of testimony." Trademark Rule 2.122(c), 37 C.F.R. § 2.122(c); *see also Poly-Am., L.P. v. Ill. Tool Works Inc.*, 124 USPQ2d 1508, 1510 n.5 (TTAB 2017) (exhibits to the petition for cancellation, consisting of copies of patents, photographs of certain goods identified in the involved registrations, packaging for certain of the identified goods and Internet materials, was not evidence to the proceeding and therefore not considered), *aff'd*, No. 3:18-cv-00443-C (N.D. Tex. Oct. 29, 2019), *appeal dismissed*, No. 19-11180 (5th Cir. Feb. 4, 2020).

On the other hand, "[i]n responding to a pleading, a party must admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1)(B). "A

denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). "A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted." Fed. R. Civ. P. 8(b)(3). "A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest." Fed. R. Civ. P. 8(b)(4). "A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Fed. R. Civ. P. 8(b)(5). "An allegation … is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(5). If an allegation or document is admitted by the adverse party, it is in the record as evidence. *See Tiffany & Co. v. Columbia Indus., Inc.*, 455 F.2d 582, 173 USPQ 6, 8 (CCPA 1972) (reversing the Board's refusal to admit the opposer's trademark registration into evidence because requisite copies were not attached to notice of opposition, where the applicant "admitted the registrations referred to in the notice of opposition.").

Based on these principles, we **sustain** Respondent's objections but only to the following extent: We do not consider as factual proof any of Petitioner's statements made in the Second Amended Petition, or any of the attachments thereto, unless those facts or documents were admitted by Respondent or were otherwise supported elsewhere in the record by competent evidence.